**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BRIEANN KATZIANER**<br>Conshohocken, PA 19428<br><br>***Plaintiff,***<br><br>v.<br><br>**PARK WEST GALLERIES, INC.**<br>d/b/a PARK WEST GALLERY<br>29469 Northwestern Highway<br>Southfield, MI 48034<br><br>***Defendant.*** | CIVIL ACTION NO.:<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

## I. INTRODUCTION

Plaintiff, Brieann Katzianer ("Plaintiff"), brings claims against her former employer, Park West Galleries, Inc. d/b/a Park West Gallery ("Defendant"). Defendant discriminated against Plaintiff because of her sex (female), including, without limitation, by subjecting her to a hostile work environment and sexual harassment, and retaliated against her because she engaged in protected activity by opposing sex discrimination and sexual harassment. Defendant failed to investigate, remedy, or prevent the discriminatory, hostile, and retaliatory work environment to which Plaintiff was subjected, and ultimately terminated Plaintiff's employment for false and pretextual reasons. Plaintiff now brings claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"). Plaintiff seeks all appropriate relief, including back pay, front pay, compensatory damages, punitive damages, attorneys' fees and costs, and any other available statutory relief that this Court deems appropriate.

## II. PARTIES

1. Plaintiff, Brieann Katzianer, is an individual and a citizen of the Commonwealth of Pennsylvania. She resides in Conshohocken, PA 19428.

2. Plaintiff is female.

3. Defendant Park West Galleries, Inc. d/b/a Park West Gallery is a corporation organized under the laws of the State of Michigan, with a principal place of business located at 29469 Northwestern Highway, Southfield, MI 48034.

4. Defendant is engaged in an industry affecting interstate commerce and regularly does business in the Commonwealth of Pennsylvania.

5. Defendant conducts art auctions for clients at luxury hotels throughout the United States, including within the Commonwealth of Pennsylvania.

6. Defendant issued Plaintiff's payroll and tax forms.

7. At all times material hereto, Plaintiff worked remotely out of her home office in Pennsylvania.

8. At all times material hereto, Defendant employed fifteen (15) or more employees.

9. At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of its business.

10. At all times material hereto, Defendant was an employer within the meaning of the statutes which form the basis of this matter.

11. At all times material hereto, Plaintiff was an employee of Defendant within the meaning of the statutes which form the basis of this matter.

## III. JURISDICTION AND VENUE

12. The causes of action which form the basis of this matter arise under Title VII and the PHRA.

13. The District Court has jurisdiction over Count I (Title VII) pursuant to 28 U.S.C. § 1331.

14. The District Court has supplemental jurisdiction over Count II (PHRA) pursuant to 28 U.S.C. § 1367.

15. The District Court also has jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000), exclusive of interest and costs, and there is complete diversity of citizenship, as Plaintiff is a citizen of Pennsylvania and Defendant is a citizen of Michigan.

16. Venue is proper in this District Court under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f) because a substantial part of the events or omissions giving rise to these claims occurred within this District, including Plaintiff's remote work from her home office in this District.

17. On or about July 24, 2025, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of the acts of discrimination and retaliation alleged herein. The Charge of Discrimination was cross-filed with the Pennsylvania Human Relations Commission ("PHRC"). Attached hereto and incorporated herein, and marked as Exhibit "1," is a true and correct copy of the Charge of Discrimination (with personal identifying information redacted).

18. On or about July 23, 2026, the EEOC issued to Plaintiff a Determination and Notice of Rights for Plaintiff's Charge of Discrimination. Attached hereto and marked as Exhibit "2" is a

true and correct copy of that notice (with personal identifying information redacted).

19. Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV. FACTUAL ALLEGATIONS

20. Plaintiff was hired by Defendant on or about March 31, 2022, into the position of art auctioneer assistant.

21. Plaintiff subsequently held the position of VIP Land Events Associate, which she held until her termination.

22. Plaintiff's job duties included facilitating art auctions for clients at luxury hotels throughout the United States, soliciting and booking clients to attend events, assisting auctioneers, handling artwork, and managing event-day logistics.

23. Plaintiff consistently demonstrated positive performance and dedication to Defendant, performed her duties in a highly competent manner, and received positive feedback.

24. Plaintiff last reported to Robert Ducat (male), Manager of the Land Team.

25. Ducat reported to John Block (male), Chief Operations Officer.

26. Block reported to Marc Scaglione (male), President.

27. Defendant has an underrepresentation of female employees, especially in high-level positions.

28. Defendant has no female employees in leadership positions except for Scaglione's sister.

29. Female employees, including Plaintiff, were expected never to wear jeans at evening events, while male employees were encouraged to wear jeans.

30. Female employees were expected to wear cocktail attire, including heels, at evening

events, while male employees were permitted to wear more casual attire, such as blazers and jeans.

31. Jason Betteridge (male), Principal Auctioneer, was in a superior and supervisory position to Plaintiff.

32. Betteridge engaged in comments and conduct of a sexual nature toward Plaintiff and made sexual advances toward her.

33. Betteridge called Plaintiff "Breezy" as a nickname.

34. In October, November, and December 2022, during work event trips, Betteridge approached Plaintiff and sought to have a sexual relationship with her, and on several occasions they had sex.

35. Because of Betteridge's superior and supervisory position over her, Plaintiff had concerns that if she rejected Betteridge's advances, it could hurt her career at Defendant.

36. In late December 2022, Plaintiff made clear to Betteridge that she no longer wanted to have sex with him.

37. Betteridge continued to pursue a relationship, and sex, with Plaintiff.

38. Plaintiff rebuffed Betteridge's advances and told him to stop pursuing her.

39. In response, Betteridge commented, "Oh, Breezy always argues with me"; "Wow, I can't do anything right with you, can I?"; and "Breezy hates me."

40. In or about March 2023, Ansa Hutson (female), VIP Land Events Associate, complained to Ducat of sexual harassment in connection with Betteridge.

41. Hutson and Plaintiff discussed Betteridge's comments and conduct of a sexual nature toward Hutson.

42. On August 20, 2023, Betteridge sent Plaintiff a text message stating, "Come to my room 905." Plaintiff refused to respond.

43. In February 2024, Ducat told Plaintiff that he heard she might be feeling uncomfortable working with Betteridge because someone had told him that Betteridge was sending her inappropriate texts.

44. On May 17, 2024, Betteridge sent Plaintiff text messages stating, "You look great," "I want you," and "OK my apologies, you aren't interested, sorry if I crossed a line."

45. On June 21, 2024, Betteridge sent Plaintiff a text message, with a kiss emoji, stating, "You look nice in my jacket," and asking, "Do you want to hook up tonight?"

46. On June 23, 2024, Betteridge sent Plaintiff a text message stating, "I do love working with you. I'm sorry for the unprofessionalism. I've shown you over the years. Please know that you're amazing to me and I am listening."

47. On July 13, 2024, Betteridge sent Plaintiff a text message stating, "Sorry, you know I have sooooo much respect for You."

48. Ducat also engaged in comments and conduct of a sexual and sexist nature toward female employees, including Plaintiff.

49. Ducat introduced Plaintiff on stage at an event by stating, "This is Brie, she played collegiate volleyball. Darling, did you play indoors or outdoors? Oh, indoors, so you got to wear clothes then."

50. Ducat introduced Plaintiff on stage at an event by stating, "This is Brie. If her skirt were any shorter I'm not even sure we could call it a skirt."

51. Ducat commented that Plaintiff's skirts were getting shorter and shorter.

52. Ducat commented that Plaintiff had on a "pretty short skirt" the night before, but that it was not too short.

53. Ducat showed Plaintiff a folder on his phone of photos he had taken of women

laying out in bikinis at the pool at his apartment.

54. Ducat commented to Plaintiff that he did not know that Kayla Aihara (female), VIP Land Events Associate, "had such a big ass."

55. Ducat commented to Hannah Nail (female), VIP Land Events Associate, that he loved her tiny hands and asked if she knew why men liked tiny hands.

56. Ducat commented that he loved Nail's stockings and that he had a thing for stockings.

57. Nail and Plaintiff discussed the sexual and sexist comments and conduct to which they were subjected.

58. Ducat had a sexual relationship with Marisa Zetelski (female), VIP Land Events Associate, who was in a subordinate position to him, and who received preferential treatment from Ducat.

59. Ducat yelled at Plaintiff for failing to turn the lights off in the ballroom at a certain time and commented, "How hard is it to do lights? It's your one job." After that, Ducat told employees not to assign lights to "the girls" because they could not "handle lights."

60. Plaintiff objected to the comments and conduct of a sexual and sexist nature.

61. Plaintiff found male employees', including Betteridge's and Ducat's, comments and conduct, including but not limited to the examples set forth herein, to be based on her sex, offensive, and creating a hostile work environment for her.

62. In October 2024, Plaintiff received a bonus for being in first place, out of Land Events Associate employees, with the lowest cancellation rate in 2024.

63. On October 28, 2024, Nail met with Block and complained of sex discrimination, including sexual harassment, to which female employees, including Nail and Plaintiff, were

subjected. Nail stated that Plaintiff was willing to talk about her experience of sex discrimination, including sexual harassment, at Defendant, and told Block that he should speak with Plaintiff and other female employees.

64. No one followed up with Plaintiff regarding the above complaint of sex discrimination, including sexual harassment.

65. In October 2024, Hutson resigned from her employment with Defendant.

66. In November 2024, in a meeting with Betteridge and approximately eleven (11) other male employees, in which Plaintiff was the only female employee, Betteridge stated to Oscar Alarcon (male), Head of Logistics, "I'm going to rape you."

67. Plaintiff immediately objected to Betteridge using the word "rape" in front of her, stated that she was the only woman in the room, and told Betteridge to never make a joke like that in front of her or any woman, or anyone at all.

68. On December 3, 2024, in an email, Ducat stated that Plaintiff would only be assigned two (2) events per month until her sales figures "dramatically" improved, and he stated that her "total sales is one of the lowest of the whole land team."

69. Betteridge commented that Ducat and Block were "gunning" for Nail and Plaintiff, and that Ducat and Block wanted Nail and Plaintiff fired.

70. Betteridge commented that the decision to terminate an employee would be made by Betteridge, Block, Ducat, and Jordan Sitter (male), Auctioneer.

71. Plaintiff was treated differently and worse, and in a more hostile and dismissive manner, than male and/or noncomplaining employees were treated. For example, and without limitation, Plaintiff was berated; assigned menial and/or administrative tasks; held to a higher, more stringent standard; treated in a condescending and aggressive manner; assigned undesirable

schedules; assigned undesirable markets; assigned poor performing events; and set up to fail.

72. On March 10, 2025, in a meeting with Ducat and Block, Defendant terminated Plaintiff's employment, effective immediately.

73. The stated reason was that Plaintiff had the lowest performance out of all Associate employees.

74. Defendant's stated reason for terminating Plaintiff is false and pretextual.

75. Male and/or noncomplaining employees who had lower performance than Plaintiff were retained when Plaintiff was terminated.

76. Plaintiff was not placed on any progressive discipline.

77. Plaintiff was the only employee who was terminated on March 10, 2025.

78. Plaintiff had no opportunity to remain employed with Defendant.

79. Betteridge remains employed with Defendant.

80. Ducat remains employed with Defendant.

81. Before Plaintiff engaged in protected activity, she had no indication that her job was in jeopardy.

82. Defendant retained less qualified, male and/or noncomplaining employees in positions for which Plaintiff was more qualified.

83. Defendant assigned Plaintiff's job duties and responsibilities to male and/or noncomplaining employees, who were less qualified than Plaintiff to perform them.

84. Defendant failed to investigate the complaints of sex discrimination and sexual harassment.

85. Defendant failed to remedy or prevent the sex discrimination and retaliation to which Plaintiff was subjected.

86. Defendant made no effort to retain Plaintiff as an employee.

87. Defendant subjected Plaintiff to a hostile work environment because of her sex and/or her engaging in protected activity.

88. Defendant retaliated against Plaintiff because she engaged in protected activity by opposing sex discrimination and sexual harassment.

89. Plaintiff's sex was a motivating and/or determinative factor in Defendant's discriminatory treatment of Plaintiff, including, without limitation, in the creation of the hostile work environment to which she was subjected and in her termination.

90. Plaintiff's engaging in protected activity was a motivating and/or determinative factor in Defendant's discriminatory and retaliatory treatment of Plaintiff, including, without limitation, in the creation of the hostile work environment to which she was subjected and in her termination.

91. The sex discriminatory and retaliatory conduct of Defendant, as alleged herein, was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of her employment had been altered and that a hostile work environment existed.

92. The retaliatory actions taken against Plaintiff after she engaged in protected activity would have discouraged a reasonable employee from complaining of discrimination.

93. Defendant did not target or treat in the same way similarly situated male and/or noncomplaining employees.

94. Defendant's discriminatory and retaliatory conduct and comments have caused Plaintiff emotional distress.

95. As a direct and proximate result of the discriminatory and retaliatory conduct of Defendant, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

96. Defendant acted with malice and/or reckless indifference to Plaintiff's federally protected rights and with knowledge that its actions may, or did in fact, violate the law, warranting the imposition of punitive damages.

## COUNT I - TITLE VII

97. Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

98. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated Title VII.

99. Defendant acted willfully and/or intentionally, with malice and/or reckless indifference to Plaintiff's federally protected rights, and Defendant's conduct was especially egregious, warranting the imposition of punitive damages.

100. As a direct and proximate result of Defendant's violations of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

101. Plaintiff is entitled to all costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

102. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

103. No previous application has been made for the relief requested herein.

**COUNT II - PHRA**

104. Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

105. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated the PHRA.

106. Said violations were intentional and willful.

107. As a direct and proximate result of Defendant's violations of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

108. Plaintiff is entitled to all costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

109. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

110. No previous application has been made for the relief requested herein.

**RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant:

(a) declaring the acts and practices complained of herein to be in violation of Title VII;

(b) declaring the acts and practices complained of herein to be in violation of the PHRA;

(c) entering judgment against Defendant and in favor of Plaintiff in an amount to be determined;

(d) enjoining and permanently restraining the violations alleged herein;

(e) awarding compensatory damages to make Plaintiff whole for all past and future lost earnings, benefits, and earning capacity, which Plaintiff has suffered and will continue to suffer as a result of Defendant's discriminatory, retaliatory, and unlawful conduct;

(f) awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct;

(g) awarding punitive damages to Plaintiff under Title VII;

(h) awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees;

(i) awarding Plaintiff such other damages as are appropriate under Title VII and the PHRA; and

(j) granting such other and further relief as this Court may deem just, proper, or equitable, including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

Respectfully submitted,
**CONSOLE MATTIACCI LAW LLC**

Dated: October 8, 2026

BY: *<u>/s/ Rahul Munshi</u>*

Rahul Munshi, Esquire
1525 Locust Street, Floor 9
Philadelphia, PA 19102
(t) 215-545-7676 | (f) 215-827-5101
munshi@consolelaw.com

*Attorneys for Plaintiff, Brieann Katzianer*